4. HUSBAND AND WIFE, § 202*—*when wife may recover for services.* A married woman may recover for board, lodging and washing for the defendant, although he may not be aware that her husband consented to the making of the contract.

5. EVIDENCE, § 461*—*when weight of conflicting evidence for jury.* When evidence is conflicting its weight is to be determined by the jury.

6. APPEAL AND ERROR, § 1411*—*when verdict on conflicting evidence not disturbed.* A verdict will not be set aside by the Appellate Court where the testimony is conflicting, although the finding is against the weight of the evidence, unless it appears that the jury acted under passion or prejudice.

7. NEW TRIAL, § 67*—*when not granted for evidence not discovered subsequent to trial.* A new trial will not be granted for newly-discovered evidence which does not appear to have been discovered since the trial.

8. NEW TRIAL, § 68*—*when not granted for newly-discovered cumulative evidence.* A new trial will not be granted for newly-discovered evidence which is merely cumulative.

9. HUSBAND AND WIFE, § 202*—*when evidence sufficient to sustain verdict for wife for labor.* A judgment in favor of a married woman for board, lodging and washing for the defendant, *held* sustained by the evidence.

---

## Lida Corbly, Appellee, v. Lindsey Corbly, Appellant.

### (Not to be reported in full.)

Appeal from the Circuit Court of Ford county; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the October term, 1914. Reversed with finding of fact. Opinion filed April 16, 1915. Rehearing denied and additional opinion filed May 26, 1915.

### Statement of the Case.

Action by Lida Corbly against Lindsey Corbly, the plaintiff's father-in-law, for the alleged alienation of her husband's affections. From a judgment of $5,000 in favor of the plaintiff, the defendant appeals.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The appellant contended that the evidence did not sustain the verdict. The appellee's evidence tended to show that she had lived in Paxton all her life with the exception of five years, one of which she lived in Wichita, Kansas, and four years in Auburn Park, Chicago; that Fred Corbly, her husband, as well as the defendant were residents of Paxton; that her occupation was that of a milliner; that on the next day after her marriage she and her husband returned to Paxton and lived at a hotel two weeks; that she continued her millinery business, and that her husband went to school at Eureka, Illinois, and that she furnished the money for his tuition; that after graduating from the Eureka Business College her husband returned to Paxton and engaged in the business of shipping stock; that during the first few years of her married life her husband had been affectionate and kind to her; that during the first few years of her married life the defendant did not invite her to his house and would not speak to her or recognize her although he passed her almost every day, and that at one time in her store, brushed up against her and did not recognize her, and that this treatment of her continued until after a revival meeting held about the year 1901, when the defendant came to her crying and asked her to forgive him; and that afterwards she visited the house of the defendant, and the defendant and his wife visited her home until the last two or three years prior to her separation from her husband; that these visits and friendly relations continued up until the death of the wife of defendant in 1906; that at one time after the death of the defendant's wife, while they were eating breakfast, she asked the defendant to pass her the pepper, and he asked, "what are you going to use pepper for," and on her replying, "on my mush," he said: "Aint you got no sense at all to eat pepper on mush? Why don't you use cream on it?" That the appellant would come into her millinery store and in the presence of her

husband would say that her father was an old drunk-ard, never amounted to anything, and never made any money, only sat around and drank; that her brothers were drunkards, and they were all a pack of thieves; that they were degenerates and thieves; that Sherman had married money and Henry had married money, that Jim had married into the Irish, and that Fred (the husband of appellee) had married no better. That in 1908, the appellee and her husband had taken two little children to educate and raise, and that appellant told his son Fred in the presence of appellee, that those two little girls had parents that were disgraceful and low-down trash, and that he did not intend that any of his money should be spent on such children as those two little girls, and said if Fred continued to live with appellee in that way he would never get any of his money; that he would disinherit him entirely from his estate. That in 1910 appellant told Fred in the presence of appellee, that if he continued to live with appellee he would get in the penitentiary; that all Walkers ought to be in the penitentiary; that they were thieves, and that appellee was no better.

Mrs. Dedrich, a sister of appellee, testified that she was frequently at the home of appellee and her hus-band and that from 1896 up to about 1910 the husband of appellee showed great affection for appellee; that in 1910 she saw Fred Corbly, the husband of appellee, slap the appellee on the head and become very angry and kicked things about the house; that in 1910 she heard appellant speak to Fred Corbly in the store about some trouble an Assyrian girl had in Paxton, and he told Fred that if he wasn't gotten out of the Walker family the next thing they knew they would have him in the penitentiary, and if they did he would get none of his money to help him, and also that if he did not get out of the Walker family he would dis-inherit him; that the Walkers were thieves and rogues; that when Fred Corbly would return from a visit to

his father he would be very angry and kick things around the house.

Lizzie Walker, another sister of appellee, testified that she called at appellant's house for the purpose of collecting some money appellant owed her, and that appellant said to her if she would go to Lida Corbly and get her to give Fred a divorce without any public disgrace, he would pay her every cent he owed her, and if she did not do so she could wait for her money.

A. T. Carlson testified that Fred Corbly was very affectionate to appellee, and that they frequently hired rigs of him up to 1910.

The evidence offered by appellant tended to show that the appellee had been married to a man by the name of Maddox prior to her marriage with Fred Corbly, and that Maddox had obtained a divorce from her in Wichita, Kansas, on the grounds of adultery; that Fred Corbly had no knowledge of this prior marriage and divorce of appellee at the time he married her; that she married him under the name of Lida Walker, and in her marriage certificate in answer to the question as to the number of bride's marriage, she gave the answer "first"; that the marriage was kept secret from Fred Corbly's parents for some time, Fred Corbly staying at his father's home; that the appellant finally heard of the matter and upon mentioning the fact to his son, stated to him that the proper place for a married man was with his wife, and ordered him to go and live with his wife; that the husband then went to live with appellee and they acquired a home; that the appellant gave them considerable lumber for the purpose of building a home; that this house was afterwards sold and defendant erected a business block for the appellee to conduct her millinery business in, with a flat for residence purpose for appellee and her husband overhead; that the store room and flat was occupied by appellee in conducting her business and as a residence for herself and husband, without paying

rent for it to the time of their separation, and that the appellee remained therein until the time of trial, without the payment of rent; that at one time defendant kept them in his home for two weeks. The evidence showed that Fred Corbly after living with his wife some eight or ten years began to be suspicious of his wife's faithfulness to him, and that he finally drifted into the habit of drinking and gambling.

Fred Corbly testified that about the year 1905, the appellee seemed to lose her affection for him and that her attitude towards him changed; that she would go off on trips to Chicago to purchase millinery stock without being accompanied by him, and stay from sixty to ninety days during the fall leaving him home alone; that on one of these trips she left in January and did not return until March; that after one of appellee's trips to Chicago in the latter part of the year 1910, her husband discovered three letters hidden under a flower vase in her millinery department which aroused his suspicion; that one of the letters was postmarked Chicago, and addressed to appellee in care of a wholesale millinery house, and was written by a traveling salesman for a wholesale millinery house, who asked her to meet him at a certain corner in Chicago, and stated "they would go out and have a good time;" that finally he found a deed among some papers of his wife conveying property in Wichita, Kansas, to Lida M. Maddox; that at this time he had never heard of his wife's prior marriage, or that she had ever been known by the name of Maddox, and that on making investigation, he learned of a decree of divorce obtained from his wife by one Simon A. Maddox, at Wichita, Kansas, on the ground of adultery; that prior to this discovery she had refused to permit him to occupy the same bed for a period of several weeks, and that when he made such discovery he at once left and moved to a hotel. He testified that nothing his father had said to him or in his presence induced him to leave his wife or furnished any

reason therefor, and that he left her because he did not think she was true to him.

DOBBINS & DOBBINS and O. H. WYLIE, for appellant.

KERR & LINDLEY and SCHNEIDER & SCHNEIDER, for appellee.

MR. JUSTICE SCHOLFIELD delivered the opinion of the court.

### Abstract of the Decision.

1. HUSBAND AND WIFE, § 280*—*when evidence insufficient to sustain verdict for plaintiff in action for alienating affections.* The evidence in an action against a father-in-law for alienating the affections of a husband, *held* insufficient to sustain a verdict for the plaintiff.

2. APPEAL AND ERROR, § 1065*—*sufficiency of assignment that verdict not sustained by evidence.* An assignment of error that the court erred in overruling a motion for a new trial is sufficient to raise the question of the sufficiency of the evidence to sustain the judgment, where that was one of the grounds for such motion.

3. APPEAL AND ERROR, § 1165*—*when single question only considered.* When a single question fully disposes of a cause on appeal there is no necessity to determine other questions raised.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.